W. H. WULKE, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**EMINENT DOMAIN:** Access to Premises. Evidence held to show
1    that the building of a viaduct had, in *some* degree, interfered
with access to adjoining property, and therefore that a jury
question on the issue of damages was presented.

**EMINENT DOMAIN:** Authorized Improvement. Statutory au-
2    thority to a railway corporation to construct a viaduct over
its tracks, does not absolve the corporation from the duty
to pay resulting damages to abutting property. (See Sec.
2017, Code Supp., 1913.)

*Appeal from Marshall District Court.*—B. F. CUMMINGS,
Judge.

SEPTEMBER 29, 1920.

PLAINTIFF owns a narrow strip of land, adjoining the
right of way of defendant. His suit is for damages done
said property, through the construction of an overhead
crossing on a highway that crosses defendant's right of way,
and which extends from that right of way past and in front
of plaintiff's property. Plaintiff had verdict, and defendant
appeals.—*Affirmed.*

*Hughes, Sutherland & O'Brien* and *E. N. Farber,* for
appellant.

*F. E. Northup,* for appellee.

SALINGER, J.—I. On the west end of plaintiff's land,
there once existed a public highway, which extended across
the track of the defendant. In 1913, it constructed an over-
head crossing, and it built the approach
thereto in front of the plaintiff's land. Ap-
pellant contends the court should have ruled
that, as a matter of law, no damages were

1. EMINENT
DOMAIN:
access to
premises.

due, and that it erred in giving an instruction which permitted the jury to find damages. One ground of this position is that the evidence shows the lands affected were used generally for nothing but a pasture, and that a house at the east end was a small house. Appellee responds that the tract was suitable as well for use as a residence and for agricultural purposes. Appellant argues that, before the construction of the overhead crossing, plaintiff had access to said house from a private crossing, and that that crossing has always been and is still open. The jury could find that the overhead crossing had forced the abandonment of part of a heretofore existing public highway, and has interfered with the access of appellee to such highway, and with access generally.

It must suffice for us to say, without going into further details, that, in our opinion, the court did not err in refusing to hold that, as matter of law, no damage had been caused the appellee.

1-a

The important defense is that the construction of this overhead crossing was authorized by law, and that, therefore, the defendant is not responsible, even if the crossing caused damage. That the construction of the crossing was authorized, cannot be and is not questioned. But does it follow from such authorization that defendant must not respond in damages from constructing? We think it does not follow. No condemnation proceedings were instituted. There was no authorization by ordinance, if that be material. But Section 2017, Code Supplement, 1913, did give authority to construct this crossing. Is there anything in that statute which relieves from paying resulting damages? We think not. On the contrary, the statute itself indicates that compensation shall be made, or rather, that the right to construct is not absolute. For it is provided in this statute that, "in such cases, such corporation shall put such road, as soon as may be, in as good repair and condition as before such alteration;" and there is fur-

2. EMINENT DOMAIN: authorized improvement.

ther provision indicating that it may be required that condemnation proceedings be instituted.

It is, of course, conceded that no private property may be taken for anything but a public use, unless compensation be first made. That is a constitutional provision, and the legislature could not abrogate it if it desired to. We find nothing, however, to indicate that it did desire to, or has done so; and we are of opinion that appellant has failed to establish any exception to the general rule (assuming, once more, that it would be competent for the legislature to make such an exception). The reliance of appellant is *Milburn v. City of Cedar Rapids,* 12 Iowa 246; *Gates v. Chicago, St. P. & K. C. R. Co.,* 82 Iowa 518; *Northern Transportation Co. v. City of Chicago,* 99 U. S. 635 (25 L. Ed. 336); *Tate v. City of Greensboro,* 114 N. C. 392 (24 L. R. A. 671); *Creal v. City of Keokuk,* 4 G. Greene 47; *Cole v. City of Muscatine,* 14 Iowa 296; *Dalzell v. City of Davenport,* 12 Iowa 437.

All that is ruled in *Northern Trans. Co. v. City of Chicago,* 99 U. S. 635, is that whatsoever the law authorizes cannot be a nuisance, such as to give a common-law right of action, and that, therefore, a municipal corporation authorized by law to improve a street by building on the line thereof a bridge over or a tunnel under a navigable river, where it crosses the street, incurs no liability for the damage unavoidably caused to adjoining property by obstructing the street or the river, unless such liability be imposed by statute. Logically, to somewhat the same effect is *Tate v. City of Greensboro,* 114 N. C. 392 (24 L. R. A. 671), which holds that the destruction of shade trees standing on the outer edge of the sidewalk in front of a residence, because the municipal authorities regard them as an obstruction of the walk, and injurious to health, does not render the city or its authorized agents liable for damages to the abutting proprietor. The case of *Creal v. City of Keokuk,* 4 G. Greene 47, holds that, where a city is authorized to establish and regulate the grade of the streets, it is not liable for damages growing out of the proper exercise of

that authority. In *Cole v. City of Muscatine,* 14 Iowa 296, it is held that there is no common-law liability for damages, as against a municipal corporation which changes a grade of a street; but that, when a statute gives a right and creates a liability which did not exist at common law, and at the same time points out a specific method by which the right can be asserted and the liability ascertained, that method must be strictly pursued.

The essential effect of all these is a holding that, where a municipal corporation does an authorized act, to which the statute attaches no liability, it cannot be made to respond in damages caused by the doing of that act. If that be applicable to acts done by a private corporation merely because a statute authorizes them to be done, it contravenes that provision of the Constitution of the state which declares that private property may not be taken for a public use, without payment of compensation.

We construe *Gates v. Chicago, St. P. & K. C. R. Co.,* 82 Iowa 518, to come close to being express authority for the proposition that, though the construction of the crossing be permitted, the corporation must respond to damages caused thereby. The utmost that can be claimed for *Milburn v. City of Cedar Rapids,* 12 Iowa 246, is that, where the construction is authorized by statute, the corporation cannot be dealt with as having created a public nuisance. But though a construction is authorized, and, therefore, not a nuisance, that does not settle that the erector is absolved from compensating. The sanction by statute relieves the corporation from being a trespasser, but does not relieve it from making proper compensation for damage caused. One may be damaged by the erection of a permanent structure though same be lawfully erected. *Fowle v. New Haven & N. Co.,* 107 Mass. 352.

*Dalzell v. City of Davenport,* 12 Iowa 437, is irrelevant to any matter in issue here.

In our judgment, there must be an affirmance.— *Affirmed.*

Weaver, C. J., Evans and Preston, JJ., concur.