STATE OF MISSOURI ex rel. and to Use of
STORMFELTZ v. TITLE GUARANTY
& SURETY CO. et al. *
No. 9911.

Circuit Court of Appeals, Eighth Circuit.
Aug. 6, 1934.

E. H. Gamble, of Kansas City, Mo. (S.
M. Mandell, Hyde & Fischer, and Trusty &
Pugh, all of Kansas City, Mo., on the brief),
for appellant.

Wendell H. Cloud, of Kansas City, Mo.,
for appellee Title Guaranty & Surety Co.

Floyd E. Jacobs, of Kansas City, Mo.
(Mitchel J. Henderson, of Kansas City, Mo.,
and John Farrington, of Springfield, Mo.,
on the brief), for appellee American Surety
Co., of New York.

Before STONE and GARDNER, Circuit
Judges, and JOYCE, District Judge.

GARDNER, Circuit Judge.

This is an appeal from a judgment dis-
missing appellant's amended petition after
the court had sustained a demurrer thereto,
and appellant had refused to plead further.
The case was docketed below as an action at

law but appellant moved to transfer it to the equity docket, but no action seems to have been taken on this motion. The court, in its opinion[1] sustaining the demurrer, said: "If in equity, the demurrers will be treated as motion to dismiss."

In the amended petition there are sixty-eight counts. In the first count it is alleged that appellee Luther J. Stormfeltz on November 7, 1911, was by order of the probate court of Mercer county, Mo., appointed guardian of his minor son, relator herein. The order of appointment required that he give bond to the state of Missouri with the appellee Title Guaranty & Surety Company as surety, in the penal sum of $250,000, conditioned for the faithful performance and discharge of his duties as guardian. He gave such a bond which was approved and accepted by the court, and he qualified as guardian of the person and estate of his ward, and remained such throughout the period of his minority. On or about November 8, 1913, the appellee American Surety Company guaranteed payment of and agreed to hold the appellee Title Guaranty & Surety Company harmless as against all liability on this bond, in consideration of which there was transferred to it the right to receive and retain all unmatured premiums, and thereafter all premiums on the bond were paid to the American Surety Company until the ward reached his majority, which was on February 28, 1925.

On March 28, 1925, the guardian filed in the probate court his purported final settlement, consisting of a report of debits and credits in his account, in which he accounted to relator for the sum of $145,235.56. Indorsed on the report is a recital, over the signature of the judge of the probate court, that the judge examined, approved, and filed it on March 28, 1925, and that it was recorded in Settlement Record Book 7 at page 369. On the same day the court made an order to the effect that there was due from the guardian to the relator as his ward the sum of $145,-235.56, for which the guardian filed the ward's receipt, and that thereupon the settlement was approved and the guardian finally discharged. The receipt referred to in the order consisted of a statement signed by the relator at the foot of the report to the effect that he thereby acknowledged receipt in full of the properties and securities therein listed. It is dated March 26, 1925. The first day of the term in which the report was filed was February 9, 1925, and the term extended to and ended on May 9, 1925.

After setting out the foregoing facts, it is alleged: "The foregoing sets forth the entire judgment roll of the proceedings of March 28, 1925, and concludes the probate record of said guardianship. No reference to any final settlement is contained elsewhere in the records of said term or elsewhere in the records of said Court."

The amended petition alleges that the purported final settlement of March 28, 1925, was not filed in the probate court at least four weeks before the first day of said term "or at any time, excepting as hereinbefore stated"; that no copy thereof was delivered to relator four weeks before the first day of the term, or at any other time; that no notice stating the day upon or the court in which the guardian would make any settlement, final or otherwise, was delivered to the relator four weeks before the first day of the term, or at any other time; that through 1925 and for four years prior thereto relator lived in the guardian's home, and service of such notice could have been made on him; that no evidence was presented to or finding made by the court of the delivery of such notice, or copy, to relator before the commencement of the term, and the court did not order a notice of the filing of the exhibit or of the time and place at which final settlement was to be made, to be given by publication four weeks before the first day of the February term, or at any other time, in any newspaper printed in the English language and published in Mercer county, nor by printed handbills put up in six of the most public places in that county, designated by the court, and no such publication was made in any newspaper or notice posted in any place, and the settlement was filed and the order made without knowledge or notice on the part of the relator of any such filing or the rendition of any such order.

The petition also alleges that not only is the judgment of final settlement void because of the aforesaid jurisdictional defects, but further that there are certain extrinsic facts of fraud which vitiate the final settlement. A detailed recital of the property embraced in the report and that omitted therefrom, according to the allegations of the amended petition, would seem to be unnecessary. The fraud alleged is that the guardian knew "that the settlement of account embodied in said exhibit was not a true and complete report of his account with relator, and knew that the averment therein contained that he had charged himself with all money and personal effects belonging to relator's estate for which

---

[1] Not for publication.

said guardian had not previously accounted was false, and in that he wilfully and designedly suppressed and concealed from the court the true condition of said account, and of various appropriations and misapplications by him of relator's funds and property, and in that said fraudulent representations, suppression and concealment were to enable said guardian to procure, and it was only thereby that he did procure, the entrance of said order of final account and discharge."

The details of the alleged fraud need not be here recited. It is alleged that the relator's inexperience in business and his reliance upon the integrity and judgment of his guardian, and the concealment of the true condition of affairs from him after he attained majority, deceived him, and he was not put on inquiry as to the real state of affairs until about two years before the commencement of this action. The prayer for relief is: (1) "That said probate order of March 28, 1925, hereinbefore described, insofar as it purports to be a judgment of final settlement and discharge of said guardian, be adjudged void and held for naught," and (2) that the plaintiff recover the sum of $36,974.-27 with interest.

The succeeding counts incorporate many of the allegations of the first count. The second count seeks recovery of the premiums paid the appellee surety companies; the third count alleges that on or about July 5, 1912, the guardian received for the account of the relator's estate the sum of $12,410, which he concealed from the probate court, and the relator failed to account for and converted to his own use. The prayer for relief, except as to the amount of money demanded, is the same as in the first count.

Count 4 alleges that through mismanagement and carelessness, $40,000 of relator's moneys, which were at all times during relator's minority in the possession of the guardian, were lost; that by reason of the failure of the guardian to invest such money, as required by the Missouri statutes, the relator lost in interest not less than $35,000. The prayer for relief is identical with that of the prayer in the first count, except as to the amount demanded.

Count 5 alleges that on or about December 30, 1916, the guardian wrongfully and fraudulently caused and permitted to be abstracted from a lumber yard belonging to the estate the sum of $1,000. Except as to the amount, the prayer for relief is identical with that in the first count.

All of the remaining counts of the amended petition are substantially identical with counts 5 and 6, except as to dates, amounts, and the lumber yard from which the diversion is alleged to have been made.

This action was originally commenced in the circuit court of Green county, Mo., and on ground of diversity of citizenship was removed to the District Court of the United States, for the Western District of Missouri. One of the grounds of demurrer was that the circuit court of Green county was without jurisdiction of the subject-matter in equity.

The parties appeared to be unwilling or unable to determine whether this is an action at law or a suit in equity, and apparently the lower court was in doubt on the question. As the appeal is from the judgment entered after sustaining the demurrer, the question to be determined is whether or not the petition states facts sufficient to constitute a cause of action, either at law or in equity. In other words, we are not here necessarily concerned with the question as to whether this should be designated as a law action or an equity suit, nor are we concerned with whether or not there is a commingling of allegations with those appropriate to a law action or a suit in equity, nor whether the pleading contains surplusage or is otherwise subject to criticism.

The main purpose of this action is to recover upon the bonds the amounts claimed to be due from the guardian. The purpose of the allegations attacking the final settlement is manifestly to meet an anticipated defense of res adjudicata. These allegations might well have been omitted from the pleading, and if the judgment of final settlement and discharge were pleaded as a defense, they might appropriately have been pleaded by way of reply.

The Missouri courts have consistently held that an action on a guardian's bond may be maintained against the surety before any indebtedness has been previously established or any judgment of final settlement obtained. State v. Slevin, 93 Mo. 253, 6 S. W. 68, 3 Am. St. Rep. 526; Oldham & Broaddus v. Trimble, 15 Mo. 225; State v. Roeper, 82 Mo. 57. We are, therefore, of the view that this is a case at law. While the allegations of the amended petition with reference to the entry of alleged final settlement were unnecessary, yet, if they disclose facts which preclude the plaintiff's right of recovery, then the demurrer was properly sustained.

A final settlement and discharge properly obtained is binding upon the ward, having the same force and effect as a judgment. State v. Leslie, 83 Mo. 60; State v. Roland, 23 Mo. 95; Brent v. Grace's Adm'r, 30 Mo. 253. It is therefore earnestly contended by the appellees that the final settlement set out in the amended petition is not subject to collateral attack. If a judgment is to be impeached for infirmities not appearing upon the face of the record, it must be reached by some direct proceeding, and the Supreme Court of Missouri has held that an assault in equity upon a judgment or decree procured by fraud is a direct attack, but as we are of the view that this action should be construed to be an action at law this rule cannot be invoked. If, however, the judgment is void upon its face, then it may be attacked collaterally in an action at law. State v. Hartmann, 330 Mo. 386, 51 S.W.(2d) 22; Givens v. Harlow, 251 Mo. 231, 158 S. W. 355; Howell v. Sherwood, 213 Mo. 565, 112 S. W. 50; Ex parte Holliway, 272 Mo. 108, 199 S. W. 412; Gray v. Clement, 286 Mo. 100, 227 S. W. 111; Rich v. Mentz, 134 U. S. 632, 10 S. Ct. 610, 33 L. Ed. 1074; Hovey v. Elliott, 167 U. S. 409, 17 S. Ct. 841, 42 L. Ed. 215; Guaranty Trust, etc., Co. v. Green Cove Springs & M. Railroad Co., 139 U. S. 137, 11 S. Ct. 512, 35 L. Ed. 116; In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. Ed. 402.

If the judgment here attacked is voidable only, that is irregular or defective to such an extent that it would be set aside or annulled on a proper direct application for that purpose, still it would not be subject to collateral impeachment. Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 9 S. Ct. 781, 33 L. Ed. 178; Reed v. Nicholson, 158 Mo. 624, 59 S. W. 977; Posthlewaite v. Ghiselin, 97 Mo. 420, 10 S. W. 482; Gunby v. Cooper, 177 Mo. App. 354, 164 S. W. 152. On the other hand, if the record discloses jurisdictional defects which render the judgment void, then it is subject to collateral attack in a law action. Rich v. Mentz, 134 U. S. 632, 10 S. Ct. 610, 33 L. Ed. 1074; Hatch v. Ferguson (C. C. A. 9) 68 F. 43, 33 L. R. A. 759; Kansas City, Ft. S. & M. R. Co. v. Morgan (C. C. A. 6) 76 F. 429; State v. Duncan, 195 Mo. App. 541, 193 S. W. 950; Russell v. Grant, 122 Mo. 161, 26 S. W. 958, 43 Am. St. Rep. 563. It is, therefore, necessary to inquire whether this judgment is void on its face.

Section 430, Revised Statutes of Missouri 1929 (Mo. St. Ann. § 430, p. 271), covers the subject of final settlement by guardians. It contains in substance the following provisions: (1) Guardians cannot make final settlement so long as the right of control over the estate of the ward continues, but only "upon cessation of their authority," whether by revocation, resignation or the attainment of majority by the ward, or the marriage of female wards. (2) A guardian, in order to make a final settlement, "shall make a just and true exhibit of the account between himself and his ward." (3) He must "file the same in the court having jurisdiction thereof * * * at least four weeks next before the first day of the term of court at which such settlement is * * * to be made." (4) He must cause a copy of such exhibit, together with a written notice stating the day on which and the court in which he will make such settlement, to be delivered to his ward, or to the succeeding guardian or curator, at least four weeks next before the first day of the term of the court at which such settlement is to be made; or, if such copy and notice cannot be so delivered an order must be made by the probate court that notice of the filing of such exhibit be given by publication or the posting of handbills, and thereupon the guardian must make such publication or post such bills. (5) Judgment of final settlement cannot be entered except upon proof by the guardian of compliance with the foregoing requirements as to notice, actual or constructive. (6) The settlement shall not be made by the guardian with the ward, but must be made by the guardian with the court, and any errors in the account shall be corrected, not by the ward, but by the court.

In challenging the validity of the final settlement, appellant contends: (1) That no exhibit of account for final settlement was filed with the probate court for four weeks before the commencement of the February term, which was February 9, 1925; (2) that no notice of the exhibit and no notice stating the day upon or the court in which the guardian would make any final settlement was served upon or delivered to the ward four weeks before the first day of the February term, but the exhibit was filed and order made without any notice to or knowledge of the ward; (3) that no reference to the matter of the final account is contained in the records of the probate court of Mercer county, other than the filing of the report of the guardian the receipt of the ward, and the court's approval thereof on March 28, 1926.

The required notice to be effective must have been served upon the ward at a time after he had reached his majority and was sui juris. In other words, the ward must have attained his majority at least four weeks be-

fore the beginning of the term at which the final settlement is to be presented. The record here shows on its face that this was not and could not be true. The report was filed at the "February term, 1925," and recites that the ward "arrived at his majority February the 28th, 1925," yet the report was presented, acted upon, and the discharge made at that term. It therefore appears upon the face of the record that the final settlement and the order approving same are void for failure to observe the jurisdictional requirements of the statute, and hence the judgment of the probate court is subject to collateral attack, and plaintiff can maintain this action at law.

It is urged, however, that since this case came to the federal court by removal, it can have no greater jurisdiction than that of the state court from which it was removed. This argument can have no bearing upon the right of the plaintiff to maintain an action at law. The court from which this action was removed had jurisdiction to entertain this action at law. If, as we have held, this alleged judgment of final discharge is a nullity, then it was not necessary nor indeed proper to attack it by a suit in equity (Buffington v. Carty, 195 Mo. 490, 93 S. W. 779); but being a nullity, it is subject to collateral attack in any court.

It is contended that the federal court will not exercise its equitable jurisdiction if there is remedy in the probate court itself. But we have held that the suit is one at law and not in equity. The federal court will not interfere with the probate of an estate in so far as the payment of debts and the settlement of accounts are concerned. Sutton v. English, 246 U. S. 199, 38 S. Ct. 254, 62 L. Ed. 664; Simmons v. Saul, 138 U. S. 439, 11 S. Ct. 369, 34 L. Ed. 1054; O'Connor v. Slaker (C. C. A. 8) 22 F.(2d) 147. But this is not a suit to set aside the guardianship or assume general administration. There is the requisite diversity of citizenship and the amount in controversy. The matter need be pursued no further because the argument has no application in this action at law which under the Missouri decisions can be maintained before there has been a final accounting.

It is finally argued that there is a misjoinder of parties. This is based upon an apparent misconception of the nature of the action. All the parties defendant are interested in the entire subject-matter of the suit, and they are clearly all proper parties.

In view of the conclusion we have reached, the other contentions of the parties become immaterial.

The judgment appealed from is therefore reversed and the cause remanded to the lower court for further proceedings consistent herewith.